IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICKOLE NESBY, | ) | |
| | ) | |
| Plaintiff, | ) | 2:18-CV-01655-CCW |
| | ) | |
| v. | ) | |
| | ) | |
| JANET YELLEN, *Secretary of U.S.* | ) | |
| *Department of Treasury* | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM ORDER ON PRETRIAL MOTIONS IN LIMINE**

Pending before the Court are four motions in limine filed by the parties.  For the reasons set forth below, the Court resolves these motions as follows:

- Defendant's Motion in Limine to Preclude Plaintiff from Including Non-Exhausted "Adverse Actions" in Her Retaliation Claim, ECF No. 119 will be GRANTED in part and DENIED in part;

- Defendant's Motion in Limine to Strike the Expert Report and Exclude the Testimony of Scott L. Tracy, Ph. D., ECF No. 117 will be GRANTED in part and DENIED in part;

- Defendant's Renewed Motion in Limine to Preclude Plaintiff from Seeking, Introducing Evidence Regarding, or Recovering Backpay, Frontpay, or Employee Benefit Damages, ECF No. 116 will be DENIED;  and

- Plaintiff's Motion in Limine to Preclude Defendants from Offering Evidence or Argument that Plaintiff Failed to Mitigate Her Damages, ECF No. 127, will be DENIED.

## I.   BACKGROUND

On December 13, 2018, Plaintiff, Nickole Nesby, a former employee of the Internal Revenue Service, filed this action alleging that Defendant, then-Secretary of the United States Department of the Treasury, Stephen Mnuchin (the "Treasury Department") discriminated against her on the basis of her disability, in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and retaliated against her for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  *See* ECF No. 1 ¶¶ 58, 59.

Following discovery, the parties filed cross-motions for summary judgment.  *See* ECF Nos. 44 & 48. Ms. Nesby sought partial summary judgment, with respect to her Rehabilitation Act claim, and the Treasury Department sought summary judgment with respect to both Ms. Nesby's Rehabilitation Act claim and her Title VII retaliation claim. *Id.*

The Court granted the Treasury Department's motion for summary judgment with respect to Ms. Nesby's Rehabilitation Act claim and denied the Treasury Department's motion for summary judgment with respect to Ms. Nesby's Title VII retaliation claim. *See* ECF No. 67.  The Court also denied Ms. Nesby's partial motion for summary judgment. *See id.*  A jury trial on Ms. Nesby's Title VII retaliation claim is currently scheduled to begin on May 2, 2022.  ECF No. 133.

## II.   Legal Standard

"[A] motion in limine is a pretrial motion which requests that the Court prohibit opposing counsel from referring to or offering evidence on matters prejudicial to the moving party."  *Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 246 (W.D. Pa. 2012) (Gibson, J.).  A trial court has discretion arising from its "inherent authority to manage the course of trials" to rule on such motions.  *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  That said, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all

potential grounds" to ensure that juries are not exposed to unfairly prejudicial, confusing, or irrelevant evidence. *Johnstown Heart & Vascular Ctr., Inc. v. AVR Mgmt., LLC*, 2019 U.S. Dist. LEXIS 131234, at *7 (W.D. Pa. Aug. 6, 2019) (Gibson, J.) (internal citation omitted).

### III.   Analysis

### A.   Defendant's Motion in Limine to Preclude Plaintiff from Including Non-Exhausted "Adverse Actions" in Her Retaliation Claim, ECF No. 119, Will Be Granted in Part and Denied in Part

#### 1.   The Parties' Arguments

The Treasury Department seeks to limit Ms. Nesby's Title VII retaliation claim to the Internal Revenue Service's alleged failure to timely process or approve her hardship relocation transfer request ("HRT request") and to exclude any retaliation claim based on "any termination, wrongful discharge, and/or failure to approve a leave of absence."  ECF Nos. 119 & 120.  The Treasury Department argues that Ms. Nesby abandoned at the administrative level all claims except her retaliation claim based on the failure to approve her HRT request.  ECF No. 120 at 1–2.  Thus, any additional retaliation claims based on termination, wrongful discharge, and/or failure to approve a leave of absence are not fairly within the scope of Ms. Nesby's September 30, 2014 Complaint of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC") or the EEOC's subsequent investigation of said complaint. *Id.*

Ms. Nesby does not respond to the issue of abandonment but contends that retaliation claims regarding the failure to approve her medical leave of absence and her subsequent termination were properly exhausted, because they are reasonably related to the allegations in her EEOC complaint.  ECF No. 130 at 1–3 (citing "Request for Leave or Approved Absence" section of her EEOC complaint).

## 2.   Exhaustion of Administrative Remedies Should Have Been Raised Earlier

"It is well settled that motions in limine address evidentiary questions and are inappropriate devices for resolving substantive issues . . . ."  *Zebley v. Judge*, No. 11-6258, 2013 U.S. Dist. LEXIS 35842, at *4 (ED. Pa. Mar. 12, 2013) (citation and internal quotation marks omitted);  *see also Flores v. Pennsylvania*, No. 18-0137, 2019 U.S. Dist. LEXIS 6675, at *5–9 (E.D. Pa. Jan. 14, 2019) (noting that "it would have been more appropriate … to have raised [the administrative exhaustion] issue in a dispositive motion," but ruling narrowly on the issue);  *but see Wagner v. Crawford Cent. Sch. Dist.*, No. 04-264 Erie, 2008 U.S. Dist. LEXIS 25594, at *5–6 (W.D. Pa. Mar. 31, 2008) (McLaughlin, J.) (rejecting argument that defendant waived failure to exhaust defense because it was raised in the answer and in a motion in limine before the commencement of trial);  *Zaengle v. Rosemount, Inc.*, No. 08-2010, 2014 U.S. Dist. LEXIS 9991, at *8 (E.D. Pa. Jan. 28, 2014) (ruling on a motion in limine to preclude "testimony, evidence, argument or comment concerning any discrete acts of alleged discriminatory conduct" that was not administratively exhausted). Here, at summary judgment, the parties addressed the exhaustion of administrative remedies of Ms. Nesby's Title VII claim only in footnotes, whereas they briefed the issue of administrative exhaustion at length for Ms. Nesby's now-dismissed Rehabilitation Act claim.  *See* ECF No. 45 at 16 n.13;  ECF No. 57 at 18 n. 10;  ECF No. 66 at 7 n.12;  *but see John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir.1997) ("arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").  It would have been advisable for the parties to address administrative exhaustion issues more fully at the dispositive motion stage.  However, the Court declines to find that the Treasury Department

waived the administrative exhaustion issue by not squarely addressing it earlier in a dispositive motion, and will instead proceed to address the parties' substantive arguments.

### 3. The Exhaustion of Administrative Remedies Requirement

Prior to seeking judicial relief under Title VII, a "plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." *Moss v. Potter*, No. 07-2779, 2007 U.S. App. LEXIS 23318, at *4 (3d Cir. Oct. 3, 2007) (citing *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)). "If the employee files suit in the district court, only those claims that are 'fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom,' are considered to have been exhausted." *Id.* (citing *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).

In determining whether a claim has been administratively exhausted, the Court looks at "whether the allegations in the judicial complaint are reasonably related to those in the administrative charge" and is "not limited to the four corners of the administrative charge." *Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 773 (3d Cir. 2019) (citing *Waiters*, 729 F.2d at 237, *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978), and *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 399 (3d Cir. 1976)); *see also Fogarty v. Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ.*, No. 2:19-CV-00173-MJH, 2019 U.S. Dist. LEXIS 181837, at *12 (W.D. Pa. Oct. 21, 2019) (Horan, J.) ("courts liberally interpret the administrative filing"). In doing so, the Court considers whether there is a "'close nexus' between the facts alleged in the administrative charge and any newly raised claim" to determine "whether the alleged acts in the federal lawsuit are fairly encompassed within the scope of the prior agency charge and related investigation." *Fogarty*, 2019 U.S. Dist. LEXIS 181837, at *12 (internal citations and quotations omitted).

However, when a plaintiff voluntarily withdraws or abandons a claim at the administrative level, the exhaustion of administrative remedies requirement of Title VII is not met. *Doe v. Winter*, Civil Action No. 1:04-CV-2170, 2007 U.S. Dist. LEXIS 25517, at *14–15 (M.D. Pa. Apr. 5, 2007); *see Katz v. Winter*, 303 F. App'x 125, 126 (3d Cir. 2008) (holding that plaintiff "voluntarily abandoned those administrative claims and thus did not exhaust his ability to obtain a remedy before the EEOC"); *Haas v. Garland*, No. 4:19-CV-02152, 2022 U.S. Dist. LEXIS 53563, *15-16 (M.D. Pa. Mar. 24, 2022) ("once a plaintiff abandons or waives his claims at an administrative level, he cannot bring those claims to the district court"). For example, in *Doe v. Winter*, although the complainant alleged discrimination claims on the basis of age and religion at the administrative level, the Court found that because Doe, in his response to the defendant's motion to dismiss the administrative complaint without a hearing, limited his claims to his retaliation claims he had abandoned his age and religious discrimination claims. *Id.* at *14–15. Thus, the Court found that "those claims were not exhausted, and may not be raised at the federal level." *Id.*

### 4. Ms. Nesby's Abandonment of Claims at the Administrative Level

Ms. Nesby contends that she should not be precluded from basing her Title VII retaliation claim on her leaves of absences and her ultimate termination, because they are "reasonably related to the allegations" raised in her EEOC complaint, ECF No. 130 at 1–2, and are thus "'fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom,'" *Waiters*, 729 F.2d, at 237. She contends that such her Title VII retaliation claim based on leaves of absences and her ultimate termination have been exhausted because they are "reasonably related" to an incident regarding the denial of medical leave identified in her EEOC complaint (the "Alleged Advance Leave Retaliation Claim"). *See* ECF No. 130 at 2 (citing "Request for Leave or Approved Absence" entry in EEOC complaint); *see also* ECF No. 47-8 (EEOC complaint alleging "I have

been retaliation/reprisal [sic]... I submitted several forms … requesting advance leave… I was not eligible for advance leave… I suffer from medical conditions that would be considered as 'serious'… [and] '[a]dditional leave will be likely needed…'").  The EEOC accepted the Alleged Advance Leave Retaliation Claim for investigation.  *See* ECF No. 47-50 at 3 (accepting for investigation the incident that "management granted [Ms. Nesby] only 48 hours of advance sick leave, although she had requested significantly more hours.").

However, the Alleged Advance Leave Retaliation Claim was not adjudicated on the merits by the administrative judge.  In Judge Todd's administrative summary judgment opinion, she found that Ms. Nesby did not refute the Treasury Department's assertion that "[Ms. Nesby] does not contest or challenge the Agency's argument, that, as it relates to claims 1 through 5 identified above, and claim 7, there are no triable issues of fact that requires a hearing to resolve, and that none of these claims are legally actionable."  ECF No. 47-52 at 3.[1]  Thus, Judge Todd dismissed those claims in favor of the Treasury Department.

Therefore, Judge Todd narrowly tailored the administrative summary judgment decision as follows:  "*[t]he remaining claim in this matter is* whether the [Treasury Department] unlawfully discriminated against [Ms. Nesby], and subjected her to hostile work environment harassment, based on disability (situational depression/depression, bi-polar disorder) and/or in

---

[1] The first page of the administrative summary judgment opinion also notes that "while the accepted issue in this case also included the basis of race (Black) discrimination, pursuant to the parties' Joint Status Report, Complainant voluntarily withdrew 'all but her Rehabilitation Act and retaliation claims.'"  ECF No. 47-52 at 1 n.3.

reprisal when [t]he [Treasury Department] did not timely process [Ms. Nesby's] hardship relocation request?"  ECF No. 47-52 at 3 (emphasis original).

Similar to the complainant in *Doe v. Winter*, who did not address age and religious discrimination when responding to the agency's motion, Ms. Nesby[2] did not refute the Treasury Department's motion on any of her other claims.  *See* ECF No. 47-52 at 3.

Thus, the Court finds that the Alleged Advance Leave Retaliation Claim was abandoned, and therefore is not properly exhausted and does not provide a foundation for Ms. Nesby to introduce her leaves of absence and her ultimate termination at trial.  *See Reed v. Potter*, No. 1:08-cv-3426-CC-AJB, 2009 U.S. Dist. LEXIS 155026, at *21 (N.D. Ga. Oct. 23, 2009) (noting that "courts have concluded that a party has abandoned (and therefore not exhausted) claims" when "a plaintiff failed to address a claim at any other point in the administrative process.");  *Cook v. Green*, No. 3:07-0637, 2008 WL 686220, at *6 (M.D. Tenn. Mar. 7, 2008) ("If a plaintiff identifies a cause of action in an early filing but subsequently abandons that cause of action during the administrative process, he has not exhausted his administrative remedies with respect to that claim.").

### 5.   The HRT Request Does Not Allow Ms. Nesby to Now Bring A Title VII Retaliation Claim Based on Leaves of Absence Due to Medical Reasons

Ms. Nesby also argues that the denial of other leaves of absence are "like" or "reasonably related" to the failure to process her HRT request, because those denials involve an employee benefit, were carried out by the same supervisors, and were motivated by the same retaliatory animus.  ECF No. 130 at 2-3.

---

[2] Ms. Nesby was represented by counsel during at least part of the EEOC proceedings.  *See* ECF 58 ¶ 101 (indicating that plaintiff only disputes that she was represented by *current* counsel during the EEOC process);  *id.* ¶ 102 (no dispute that Ms. Nesby was represented by counsel at a December 2016 administrative deposition).

Although the Court "liberally interpret[s] the administrative filing," *Fogarty*, 2019 U.S. Dist. LEXIS 181837, at *12, it is clear from a comparison of the two EEOC complaint entries[3] and the EEOC acceptance of investigation letter[4] that any claims that Ms. Nesby now seeks to raise due to the denial of other leaves of absence due to medical reasons, *see* ECF No. 130 at 1, are more "reasonably related" to the Alleged Advance Leave Retaliation Claim—which Ms. Nesby abandoned during administrative proceedings—than the allegations related to her current Title VII claim based on her HRT request.  Any other reading would allow Ms. Nesby to circumvent the fact that she abandoned claims related to the denial of medical leaves of absence, and thus undermine the purpose of administrative exhaustion.  *See Webb v. City of Phila.*, 562 F.3d 256, 262-63 (3d Cir. 2009) ("While we have recognized the 'preliminary requirements for a Title VII action are to be interpreted in a nontechnical fashion,' the aggrieved party "is not permitted to bypass the administrative process.") (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)).

### 6.  The HRT Request Allows Ms. Nesby to Bring A Title VII Retaliation Claim Based on Her Termination

The Treasury Department contends that Ms. Nesby's termination is a discrete act, and therefore she did not properly exhaust a retaliation claim based on her termination.  *See* ECF No.

---

[3] *Compare* ECF No. 47-8 at 3 ("I have been denied reassignment by management. On July 18, 2014, I submitted a request for hardship relocation. On September 24, 2014, I was informed [] .., my request was not forwarded to the appropriate department and additional paperwork was missing.") *with id.* ("Lastly, I have been retaliation/reprisal [sic]. I received a signed form …  granting me provisional FMLA ... I submitted several forms … Request for Leave or Approved Absence requesting advance leave. According to Ms. Garrison on September 24, 2014, Ben Kopriva, Manager for Department One, allegedly contacted my sister, Vendetta Terry on September 18th. According to Ms. Garrison, Ben verbally told Vendetta I was not eligible for advance leave because my FMLA was pending medical certification. Ms. Garrison verbally echoed the same thing I during our conversation. …, I suffer from medical conditions that would be considered as "**serious**"…, under the FMLA… [and] **"[a]dditional leave will be likely needed**.'…") (emphasis original).

[4] *Compare* ECF No. 47-8 at 2 ("management did not timely process [Ms. Nesby's] hardship relocation request…") *with id.* at 3 ('management granted [Ms. Nesby] only 48 hours of advance sick leave, although she had requested significantly more hours.").

120.  Here, Ms. Nesby filed her EEOC complaint on September 30, 2014, *see* ECF No. 47-8, and the Treasury Department terminated Ms. Nesby for excessive absenteeism on June 5, 2015, *see* ECF No. 1 ¶ 51.

If a discrete act occurs after a plaintiff receives a right-to-sue letter from the EEOC on the plaintiff's earlier claim, such an act is not "fairly within the scope of an [EEOC] complaint or the investigation growing out of that complaint," and must be separately exhausted.  *See Green v. Postmaster Gen. of the United States, 437 F. App'x 174 (3d Cir. 2011)* (citing *Waiters*, 729 F.2d at 237); *Fogarty v. Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ.*, No. 2:19-CV-00173-MJH, 2019 U.S. Dist. LEXIS 181837 (W.D. Pa. Oct. 21, 2019) (Horan, J.) (collecting cases).

However, district courts within the Third Circuit differ as to whether a discrete act that occurs *after* the filing of an EEOC charge but *during the pendency* of the administrative investigation must be separately exhausted.  *Warsavage v. 1 & 1 Internet, Inc.*, No. 17-5104, 2018 U.S. Dist. LEXIS 87542, at *8 (E.D. Pa. May 24, 2018) ("While in *Morgan* the discrete acts occurred before any right to sue letter was issued and in *Green* thereafter, the required result is the same.  A specific charge must always be timely filed with the EEOC as to a discrete act of discrimination for it to be actionable.") *with McMullen v. Arcadia Univ.*, No. 17-4011, 2018 U.S. Dist. LEXIS 70524, at *13 (E.D. Pa. Apr. 26, 2018) (collecting cases and finding that plaintiff "exhausted her administrative remedies with respect to the suspension and reorganization leading to her demotion because both occurred during the pendency of the April 5, 2016 EEOC investigation and were within the scope of the investigation reasonably expected to grow out of that charge.").

In *Simko v. U.S. Steel Corp*,[5] the Third Circuit rejected the plaintiff's argument that he did not have to file an additional EEOC charge with respect to his claim of retaliatory termination because his original, still-pending disability discrimination charge encompassed his subsequent claim of retaliatory termination. 992 F.3d 198 (3d Cir. 2021). In doing so, the Court rejected the approach of treating all "post-charge claims of retaliation as exhausted when they arise during the pendency of a prior charge" and instead applied the "highly fact specific" test in *Waiters*. *Id.* at 207–08. Thus, the Court will undertake the same analysis to determine whether Ms. Nesby's termination is whether "fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom." *Waiters*, 729 F.2d at 237.

Ms. Nesby appears to focus on the second prong and argues that her termination "grew out of the allegations" made in her EEOC complaint. ECF No. 130 at 3. In considering whether Ms. Nesby's termination arises from the EEOC investigation, the Court applies an objective standard, and first, closely "examine[s] the original charge's contents to determine the reasonable scope of the EEOC investigation that would likely occur" and then "parse[s] the later claim and determine[s] whether its allegations would be covered in that reasonable investigation." *Simko*, 992 F.3d at 210–11. "In comparing the two sets of allegations," the court "look[s] for factual similarities or connections between the events described in the claims, the actors involved, and the nature of the employer conduct at issue." *Id.*

Here, the EEOC complaint discusses the failure to timely process Ms. Nesby's HRT request. Ms. Nesby alleges that she would not have been terminated if her supervisors had properly

---

[5] Although the plaintiff in *Simko* was bringing claims under the Americans with Disabilities Act, the same administrative exhaustion procedures apply under Title VII. *See Simko v. U.S. Steel Corp*, 992 F.3d 198 (3d Cir. 2021) (citing *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999) for the fact that "claims asserted under the ADA must be filed in adherence with the administrative procedures set forth in Title VII").

processed her HRT request.  ECF No. 130 at 3.  Further, correspondence regarding Ms. Nesby's termination indicates that managers, including Ms. Miller (who was involved in the processing of Ms. Nesby's HRT request), knew Ms. Nesby could not come back to work unless she was reassigned.  ECF No. 51-21;  *cf. Simko*, 992 F.3d at 211–12 (finding that a "reasonable investigation of Simko's original charge of disability discrimination would not unearth facts about his allegations of retaliation nearly two years later," because they were "discrete adverse employment actions that occurred approximately two years apart and involved different supervisors in different departments.").  The consequences of the delayed processing of Ms. Nesby's request, notably that she alleges that she was unable to return to work, along with overlapping decisionmakers in her ultimate termination for absenteeism, leads the Court to find that there is a "close nexus" of supporting facts here such that Ms. Nesby's retaliation claim based on her June 2015 termination is not precluded.

Thus, Defendant's Motion in Limine to Preclude Plaintiff from Including Non-exhausted "Adverse Actions" in Her Retaliation Claim, ECF No. 119, is granted in part such that Ms. Nesby's retaliation claim based on a failure to approve any leave of absence is precluded, but denied in part such that Ms. Nesby's retaliation claim based on her June 2015 termination is not precluded.

**B.  Defendant's Motion in Limine to Strike the Expert Report and Exclude the Testimony of Scott L. Tracy, Ph. D., ECF No. 117, Will Be Denied in Part and Granted in Part**

**1.  Expert Testimony Requirements**

District court judges, in their "'gatekeeping' obligation to insure that only reliable and relevant expert testimony be presented to jurors," must ensure that the expert testimony satisfies a "trilogy of restrictions":  qualification, reliability, and fit.  *Tyger v. Precision Drilling Corp.*, 832 F. App'x 108, 111-12 (3d Cir. 2020) (citing Fed. R. Civ. P. 702, *Daubert v. Merrell Dow Pharm.*,

*Inc.*, 509 U.S. 579, 597 (1993), and *Schneider ex rel. Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2013)). In doing so, "[t]he overriding consideration with regard to these three requirements is that expert testimony should be admitted if it will assist the trier of fact." *Tyger*, 832 F. App'x, at 112 (citing *United States v. Velasquez*, 64 F.3d 844, 850 (3d Cir. 1995)).

The Treasury Department seeks to strike Ms. Nesby's expert, Scott L. Tracy, Ph. D.'s expert report and exclude his testimony. ECF Nos. 117 & 118. The Treasury Department contends that Dr. Tracy's report and opinions do not meet the standards for admissibility in Federal Rule of Evidence 702 and *Daubert*, because they are not reliable and do not fit Ms. Nesby's Title VII claim at issue.[6] ECF No. 118 at 2.

### 2. Dr. Tracy's Testimony "Fits" Ms. Nesby's Claims

To "fit" the issues in the case, the expert's opinion must be "relevant" and "assist the trier of fact." *Schneider*, 320 F.3d at 404; *see also Castagna v. W. Mifflin Area Sch. Dist.*, 502 F. Supp. 3d 992, 995 (W.D. Pa. 2020) (Lenihan, M.J.). The Court asks "whether [the] expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Fernandez*, 795 F. App'x 153, 155 (3d Cir. 2020) (citing *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010)). Following "a liberal policy of admissibility," Rule 702's "standard is not that high, but is higher than bare relevance." *Id.*

The Treasury Department argues that Dr. Tracy's opinions neither fit nor assist the jury, because his opinions only supported the now-dismissed Rehabilitation Act claim; not the current Title VII claim. *Id.* at 2–3. In addition to opining that Ms. Nesby (1) "suffers from a chronic major depressive disorder that first began in 2014…" which is a (2) "widely recognized disability," Dr.

---

[6] The Treasury Department reserved the right to question Dr. Tracy regarding his qualifications at trial. ECF No. 118 at 2 n.1.

Tracy opines that (3) "[a] medical leave of absence would have afforded [Ms. Nesby] a respite and provided an opportunity to recover from mood disorder exacerbations ...." and (4) "[r]elocation to another office closer to family support systems would have provided Ms. Nesby with the opportunity to be both successful at work and recover from mood disorder exacerbations ... If this accommodation request would have been granted .... [Ms. Nesby's] condition would have improved both in her psychological state and overall function including job performance." *See* ECF No. 104-2 at 3–4.

Ms. Nesby responds by arguing that Dr. Tracy's testimony "fits" the remaining Title VII claims because it will help the jury determine "to what extent Ms. Nesby could have worked had she been granted a leave of absence or a relocation." ECF No. 135 at 1.

Here, Dr. Tracy's testimony, while not relevant to the Title VII liability issue, is nonetheless related to damages if liability is found—specifically, whether and to what extent Ms. Nesby would have been able to work had her HRT request been granted. Thus, the Court will not exclude Dr. Tracy's testimony or evidence related to the HRT request on this ground. However, in light of this Court's ruling on Ms. Nesby's leave of absence claims, *see above* Sections III.A.4–5, the Court will grant in part the Treasury Department's motion to preclude Dr. Tracy's testimony or evidence related to the effects of a leave of absence (Opinion #3). ECF No. 118 at 2; ECF No. 104-2 at 4.

### 3. The Court Will Not Exclude Dr. Tracy's Testimony Based on Lack of Reliability

To establish reliability under *Daubert*, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Mahmood v. Narciso*, 549 F. App'x 99, 103 (3d

Cir. 2013) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert*, 509 U.S. at 590)).

Here, the Treasury Department argues that Dr. Tracy's Opinion #3 and Opinion #4 do not rest on "good grounds" because they are based "exclusively on a single, 90-minute interaction with Plaintiff (that occurred three years after the relevant events), and a review of Plaintiff's hospitalization records from 2014," and contradict other evidence in this case.  ECF No. 118 at 3–5.  Ms. Nesby contends that the Treasury Department has failed to show that "Dr. Tracy's methodology, *i.e.* his reliance on his interview with Ms. Nesby and her medical records to support his opinions, was improper or unreliable."  ECF No. 135 at 1–3.

Although the circumstances identified by the Treasury Department might persuade a jury to give Dr. Tracy's opinion less weight, they do not persuade the Court that Dr. Tracy's testimony should be precluded.  "[W]hile a medical expert who personally evaluates a plaintiff and reviews the plaintiff's medical records will certainly have good grounds for the expert's opinion, courts in the Third Circuit have admitted the testimony of medical experts who have utilized only one of those two modes of inquiry."  *Heredia-Caines v. Lehigh Valley Hosp., Inc.*, No. 5:19-cv-05815-JMG, 2022 U.S. Dist. LEXIS 15569, at *6–7 (E.D. Pa. Jan. 27, 2022) (collecting cases).  Here, Dr. Tracy both interviewed Ms. Nesby, albeit several years after the incidents at issue, and reviewed her medical records.

Thus, the Court will deny in part the Treasury Department's motion to preclude Dr. Tracy's testimony and opinion on the effects of relocation.  *See Daubert*, 509 U.S. at 596 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

For the foregoing reasons, Defendant's Motion in Limine to Strike the Expert Report and Exclude the Testimony of Scott L. Tracy, Ph. D., ECF No. 117, will be granted in part such that Dr. Tracy may not present testimony or evidence regarding the potential effects of a medical leave of absence (Opinion #3) and denied in part such that Dr. Tracy may present testimony or evidence on Opinions #1, 2, and 4.

    **C.**    **Defendant's Renewed Motion in Limine to Preclude Plaintiff from Seeking, Introducing Evidence Regarding, or Recovering Backpay, Frontpay, or Employee Benefit Damages, ECF No. 116, Will Be Denied**

        **1.**    **Equitable Relief for Back Pay and Front Pay under Title VII**

Back pay and front pay are "available to a successful Title VII plaintiff under the Civil Rights Act of 1964." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 315 (3d Cir. 2006) (citing 42 U.S.C. § 2000e-5(g)(1)).  The equitable remedy of back pay "is designed to restore a victim of discrimination to the economic position [she] would have enjoyed absent the unlawful discrimination." *Booker v. Taylor Milk Co.*, 64 F.3d 860, 866 (3d Cir. 1995.).  "Title VII provides a presumption in favor of a back pay award once liability has been found."  Third Circuit Model Jury Instructions, § 5.4.3 (Comment) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)); *see also id.* (citing *Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73, 78 n.1 (3d Cir. 2009) (explaining in Title VII case that "back pay and front pay are equitable remedies to be determined by the court")).

"As a general rule, employers are not responsible for wage loss during an employee's period of disability." *Russell v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh*, No. 02: 06-cv-1668, 2008 U.S. Dist. LEXIS 84308, at *21 (W.D. Pa. Oct. 21, 2008) (McVerry, J.); *see McKenna v. City of Phila.*, 636 F. Supp. 2d 446, 465 (E.D. Pa. 2009) ("The rationale behind this rule is that, because back pay is a compensatory remedy intended to restore the plaintiff to the position that he

would have been in had he not been discriminated against, a plaintiff should not be able to receive back pay for a period when he was unable to work for reasons unrelated to the defendant's conduct."). "However, employers may be responsible for wage loss during periods of disability when such disability might not have occurred but-for the employer's actions." *Russell*, 2008 U.S. Dist. LEXIS 84308, at *21.

### 2. The Social Security Disability Insurance Findings Are Neither Dispositive Nor Binding

The Treasury Department seeks to preclude Ms. Nesby from seeking back pay, front pay, and employee benefits, because she was disabled during the relevant period. ECF No. 116. The Treasury Department contends Ms. Nesby's past and on-going disability is evidenced by her application for social security disability insurance ("SSDI"), in which she claimed disability as of July 10, 2014 (which was before she submitted her HRT request), and her receipt of monthly SSDI payments since the SSDI application was granted in 2015. ECF No. 86 at 2. In response, Ms. Nesby contends that a Social Security Administration finding of total disability does not preclude a back pay award in a discrimination suit. ECF No. 89 at 3–5.

Courts in the Third Circuit consider the Social Security Administration determination regarding disability, but the weight of such evidence varies depending on the circumstances and other evidence. *Brown v. Cont'l Cas. Co.*, 348 F. Supp. 2d 358, 369 (E.D. Pa. 2004) (finding that the Social Security Administration determination regarding disability is persuasive in conjunction with the other evidence, but is "of course, by no means binding"); *McKenna v. City of Philadelphia*, 636 F. Supp. 2d 446, 465 (E.D. Pa. 2009) ("The Court agrees that the SSA's finding of complete disability is not binding on this Court."); *but see Shomide v. ILC Dover, Inc.*, 521 F. Supp. 2d 324, 335 (D. Del. 2007) (finding, where plaintiff neither responded to defendant's motion for partial summary judgment, nor submitted evidence of his ability to return to work, that "[t]he

doctrine of judicial estoppel prevents plaintiff from telling the SSA that he is disabled and unable to work but later telling this court that he is entitled to front pay because he can perform his former job.").

Here, in its summary judgment opinion, the Court found that the fact "that an employee represented to the government that she cannot work in an application for disability benefits… is not dispositive on its own." *See* ECF No. 67 at 17–18. Thus, the Court will not preclude Ms. Nesby from seeking back pay, front pay, and employee benefits, simply because she represented to the Social Security Administration that she was completely disabled.

### 3. The Court Will Not Preclude Ms. Nesby From Seeking Back Pay, Front Pay, and Other Equitable Remedies at This Time

The parties disagree over their interpretation of the Court's summary judgment opinion in this case. The Treasury Department contends that if Ms. Nesby were allowed to seek front pay, back pay, and other equitable damages, the Court "would effectively reverse itself, and nullify its finding that Plaintiff was too disabled to work during the relevant period – in Pittsburgh or anywhere else." ECF No. 86 at 4. According to the Treasury Department, because the Court stated that Ms. Nesby "could not perform the essential functions of her position, even with reasonable accommodation," she cannot overcome the evidentiary record of her months-long "incapacitation" and total disability. ECF No. 86 at 3. In response, Ms. Nesby contends that the Court's opinion does not preclude her from seeking back pay, because the Court found (1) that she was unable to perform her job *without* a reasonable accommodation, which she does not contest, and (2) that she was unable to perform her job *with* a reasonable accommodation only because her

proposed accommodation—indefinite leave—was unreasonable as a matter of law.  ECF No. 89
at 5.

At summary judgment, the Court found that Ms. Nesby could not resolve the inconsistency
between her SSDI application and her Rehabilitation Act claim, because, even when the evidence
was viewed in the light most favorable to Ms. Nesby, she was not able to perform the essential
functions of her position at IRS without reasonable accommodation.  ECF No. 67 at 16–19.  In
doing so, the Court analyzed Ms. Nesby's subjective belief that she could have worked if she were
transferred or granted another medical leave of absence and found that her subjective belief and
medical expert, when combined with her contemporaneous medical records, could not show a
genuine issue of material fact that she was able to work without an accommodation.  *Id.*

At this time, the Court will not preclude Ms. Nesby from seeking equitable relief in the
form of back wages, front wages, or other at trial with respect to her leave of absence claim, for
several reasons.  The cases that the Treasury Department cites in support of precluding this
evidence are cases where the plaintiff's disability was found to be completely unrelated to the
plaintiff's employment.  *See Russell*, 2008 U.S. Dist. LEXIS 84308, at *23–24 (precluding back
pay when plaintiff's left hand and wrist injury, obesity, depression, and anxiety were not caused
by defendant's alleged discrimination and/or retaliation);  *Shomide v. ILC Dover, Inc.*, 521 F.
Supp. 2d 324, 334–35 (D. Del. 2007) (precluding back pay when plaintiff sustained injuries as a
result of a non-work related automobile accident);  *McKenna v. City of Phila.*, 636 F. Supp. 2d
446, 465-66 (E.D. Pa. 2009)  (awarding back pay for the time period following plaintiff's arrest
for marijuana possession despite such misconduct, because the arrest "was caused by his
depression which was exacerbated by [defendant's] wrongful actions," but cutting off back pay at
the time of plaintiff's complete disability due to depression, because "the intervening five years

and the several jobs that [plaintiff] held during that time establish that whatever effect the [defendant's] discrimination [five years prior] had on [plaintiff] did not … cause him to become completely disabled.").

Here, the Treasury Department argues that "the alleged mishandling of [Ms. Nesby's] [HRT] request during the last few months of 2014 (well after Plaintiff was hospitalized and when she was already 'incapacitated')" cannot be said to have "caused her disability," and thus precludes her from recovering back pay, font pay, or other equitable damages.  ECF No. 86 at 2 n.1. However, Ms. Nesby alleges that if her HRT request had been properly processed (and granted), she would have been able to return to work in a different location.  ECF No. 89 at 5–8.  While the Court agrees with the Treasury Department that Ms. Nesby cannot in this case argue that the Treasury Department caused the *onset* of Ms. Nesby's initial depression, *see* ECF No. 86 at 2 n.1, her disability is not so completely unrelated to her employment as the other cases cited by the Treasury Department.  The HRT request has been identified throughout this case as a possible avenue for addressing or alleviating Ms. Nesby's mental health issues at her work and the extent of her recovery from her mental health issues is alleged to be related to the HRT request (the alleged retaliatory action at issue).

In *Gibson v. Lafayette Manor, Inc.*, the parties advanced similar arguments as those here with respect to back pay.  In that case, plaintiff requested an extended leave of absence, and the Court found that there was a question for the factfinder at trial as to when plaintiff could have returned to work and found that it was premature to determine that the plaintiff was not entitled to any back pay.  No. 05-1082, 2007 U.S. Dist. LEXIS 99008 (W.D. Pa. Mar. 5, 2007) (Lenihan, J.) *report and recommendation affirmed by*, 2007 U.S. Dist. LEXIS 22291 (W.D. Pa., Mar. 27, 2007).

Here, because the delay in processing Ms. Nesby's HRT request (the alleged retaliatory behavior) may ultimately be related to the length or severity of Ms. Nesby's continuing disability, the Court will not, at this time, preclude Ms. Nesby from seeking back pay, front pay, or other equitable damages.

For the foregoing reasons, Defendant's Renewed Motion in Limine to Preclude Plaintiff from Seeking, Introducing Evidence Regarding, or Recovering Backpay, Frontpay, or Employee Benefit Damages, ECF No. 116, will be denied without prejudice to renew if Ms. Nesby succeeds in establishing liability on her Title VII claim at trial.

### D. Plaintiff's Motion in Limine to Preclude Defendants from Offering Evidence or Argument that Plaintiff Failed to Mitigate Her Damages, ECF No. 127, Will Be Denied

#### 1. Duty to Mitigate

Under Title VII, plaintiffs have a duty to mitigate damages. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982); *Berezansky v. CNB Bank*, No. 3:17-cv-105, 2019 U.S. Dist. LEXIS 168138, at \*31 (W.D. Pa. Sep. 30, 2019) (Gibson, J.). However, the employer has the burden of proving a plaintiff's failure to mitigate. *Booker v. Taylor Milk Co.*, 64 F.3d 860, 864 (3d Cir. 1995); *see also Caufield v. Ctr. Area Sch. Dist.*, 133 F. App'x 4, 10 (3d Cir. 2005).

An employer can meet its burden by showing that "substantially equivalent work was available," and "the Title VII claimant did not exercise reasonable diligence to obtain the employment." *Booker*, 64 F.3d at 864 (citing *Anastasio*, 838 F.2d at 708). An employer can also meet its burden by demonstrating that the employee "withdrew entirely from the employment market." *Caufield*, 133 F. App'x at \*12 (citing *Tubari, Ltd., Inc. v. NLRB*, 959 F.2d 451, 454 (3d Cir. 1992)).

**2. The Court Will Not Preclude the Treasury Department from Introducing Evidence or Arguments Regarding Mitigation**

Ms. Nesby's argument for precluding the Treasury Department from arguing that she failed to mitigate her damages rests entirely on the fact that the Treasury Department lacks evidence to do so. ECF No. 128 at 1–2. In its response, the Treasury Department identifies evidence that it will present with respect to mitigation, including evidence that Ms. Nesby failed to take certain steps in her employment search, as well as her social security application and benefits. *See* ECF No. 131 at 1–3.

Ms. Nesby has offered no compelling reasons as to why the Treasury Department should be precluded from introducing such evidence, and the two cases relied upon by Ms. Nesby were at a different procedural posture than this case. In *Caufield v. Ctr. Area Sch. Dist.*, the Third Circuit found that the evidence proffered by defendant-employer at summary judgment did "not demonstrate that, as a matter of law, there was substantially equivalent employment which [plaintiff] did not reasonably discover, or that [plaintiff] left the job market altogether," not that defendant-employer was or would have been precluded from offering such evidence. 133 F. App'x 4, at *12 (3d Cir. 2005). Likewise, the court in *Anastasio v. Schering Corp.* did not preclude the defendant-employer from offering such evidence at trial. 838 F.2d 701, 708 (3d Cir. 1988). Instead, the Third Circuit found that found that two interrogatories regarding mitigation should not have been submitted to the jury, because the defendant-employer had only called into question the diligence of the employee's search and not produced evidence showing that comparable work was available. *Id.*

Therefore, Plaintiff's Motion in Limine to Preclude Defendants from Offering Evidence or Argument that Plaintiff Failed to Mitigate Her Damages, ECF No. 127, will be denied.

**IV.     Conclusion**

For the foregoing reasons, the Court resolves the Motions as follows:

- Defendant's Motion in Limine to Preclude Plaintiff from Including Non-Exhausted "Adverse Actions" in Her Retaliation Claim, ECF No. 119, is GRANTED IN PART such that Ms. Nesby's retaliation claim based on a failure to approve leaves of any absence is precluded, but DENIED IN PART such that Ms. Nesby's retaliation claim based on her June 2015 termination is not precluded;

- Defendant's Motion in Limine to Strike the Expert Report and Exclude the Testimony of Scott L. Tracy, Ph. D., ECF No. 117, is GRANTED IN PART such that Dr. Tracy's Opinion #3 is excluded, and DENIED IN PART in all other respects;

- Defendant's Renewed Motion in Limine to Preclude Plaintiff from Seeking, Introducing Evidence Regarding, or Recovering Backpay, Frontpay, or Employee Benefit Damages, ECF No. 116, is DENIED without prejudice to renew if Ms. Nesby succeeds in establishing liability on her Title VII claim at trial;  and

- Plaintiff's Motion in Limine to Preclude Defendants from Offering Evidence or Argument that Plaintiff Failed to Mitigate Her Damages, ECF No. 127, is DENIED.

DATED this 12th day of April 2022.

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record